# EXHIBIT 17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN E. YENSON d/b/a
JOHN'S GUNS,

       Plaintiff,

vs.

UNITED STATES OF AMERICA,
DEPARTMENT OF TREASURY,
BUREAU OF ALCOHOL, TOBACCO
AND FIREARMS, and
JOHN W. MAGAW,

       Defendants.
_____/

Civil Action No.
98-CV-70262-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**and**

**DENYING PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT**

       This matter is presently before the court on defendants' motion for summary judgment and on plaintiff's motion for declaratory judgment. Both motions have been fully briefed. Pursuant to E.D. Mich. LR 7.1(e)(2), the court shall decide these motions without oral argument.

       The facts in this case are not in dispute. Plaintiff John Yenson does business in St. Clair Shores, Michigan, as John's Guns. The business, which deals in firearms, operates from Yenson's private residence, located within city limits. In December 1996, defendant United States Department of the Treasury, Bureau of Alcohol, Tobacco and Firearms (ATF), denied plaintiff's

application for renewal of his federal license as a firearms dealer. The application was denied pursuant to 18 U.S.C. § 923(d)(1)(F)(i), which requires the applicant to certify that "the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located." The ATF concluded that this requirement was not met in the present case because plaintiff's business is located within an area zoned by local ordinance as "R-A," or one-family residential. With very few exceptions, businesses are not permitted to operate in R-A zones.

Pursuant to 18 U.S.C. § 923(f)(2), plaintiff requested an administrative hearing. The hearing was held in August 1997. On the hearing officer's recommendation, the ATF District Director issued a final decision denying plaintiff's application in November 1997. Pursuant to 18 U.S.C. § 923(f)(3), plaintiff commenced the instant action for review of the administrative decision. This statutory provision states in relevant part:

> In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

The court's review under this statute is de novo. See Stein's Inc. v. Blumenthal, 649 F.2d 463, 465-67 (7th Cir. 1980); Al's Loan Office, Inc. v. United States Dep't of the Treasury, 738 F. Supp. 221, 223 (E.D. Mich. 1990). In the present case, the facts are not in dispute. A single legal question is at issue, namely, whether defendant erred in concluding that the local zoning ordinance prohibits plaintiff from operating his business in a residential area, thereby authorizing the denial of plaintiff's application pursuant to 18 U.S.C. § 923(d)(1)(F)(i).

The St. Clair Shores zoning ordinance, a copy of which is attached to defendants'

2

summary judgment motion as Exhibit A, states in relevant part as follows:

> 15.050 R-A ONE FAMILY GENERAL RESIDENTIAL DISTRICT
>
> 15.051 Sec. 35.9 INTENT.
>
>> The R-A One-Family General Residential Districts are designed to be among the most restrictive of the residential districts. The intent is to provide for an environment of predominately low-density single unit dwellings along with other residentially related facilities which serve the residents in the district.
>
> * * *
>
> 15.052 Sec. 35.10 PRINCIPAL USES PERMITTED.
>
>> In the R-A One-Family General Residential District no building or land shall be used and no building shall be erected except for one or more of the following specified uses, unless otherwise provided in this Ordinance.
>>
>> (1) One-Family detached dwellings.
>>
>> (2) Publicly owned and operated libraries, parks, parkways, and recreational facilities.
>>
>> (3) Golf Courses lawfully occupied on land at the time of this Ordinance.
>>
>> (4) Cemeteries which lawfully occupied land at the time of adoption of this Ordinance.
>>
>> (5) Temporary buildings and uses for construction purposes for a period not to exceed one (1) year.

The ordinance also permits certain "accessory buildings/structures," such as parking spaces, boat houses, satellite antennas, and radio towers; and "special land uses," such as churches, schools, and public service buildings. See id. §§ 35.10A, 35.11.

Plaintiff acknowledges that this zoning ordinance "prohibits the operation of a

3

business from a resident's home." Plaintiff's Memorandum of Law, p. 1. However, plaintiff argues that the zoning ordinance is preempted by a Michigan statute, M.C.L. § 123.1102, which states:

> **Local government regulation of firearms and ammunition**
> Sec. 2. A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

Defendants appear to concede that plaintiff's application should be granted if, as plaintiff argues, the zoning ordinance is preempted by § 123.1102. See Plaintiff's Exhibit B (12-8-95 letter from ATF Director John Magaw: "If a local ordinance is pre-empted by State law, a license applicant need not certify to compliance with the local ordinance"). However, defendants argue vigorously that the zoning ordinance is not preempted.

The parties agree that the leading Michigan Supreme Court decision on preemption is People v. Llewellyn, 401 Mich. 314 (1977). In that case, defendants were convicted of violating a local obscenity ordinance. On appeal, the issue was whether the local ordinance was preempted by a state obscenity statute. The Court stated:

> In making the determination that the state has thus pre-empted the field of regulation which the city seeks to enter in this case, we look to certain guidelines.
> First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.
> Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.
> Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-

4

emption.

Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

401 Mich. at 322-24 (citations and footnotes omitted).

Based on the third and fourth factors, the Court concluded in Llewellyn that the state obscenity statute preempted the local ordinance. The Court found that "the breadth and detail of this statutory scheme provides an indication that the Legislature has pre-empted the definition and deterrence of criminal obscenity, at least to the exclusion of a supplementary ordinance such as the one before us, which seeks to establish its own definition and test for obscenity, to modify the state standards for a prima facie case of the prohibited conduct, and to alter the state-prescribed punishment upon conviction." Id. at 327. In addition, the Court concluded that "the definition and prohibition of obscenity offenses is clearly an area of the law which demands uniform, statewide treatment" due to the "uncertainty and confusion" which would result from varying local ordinances. Id.

The parties spend a great deal of time analyzing the present case under the four factors mentioned in Llewellyn, in an effort to show whether the St. Clair Shores zoning ordinance is preempted by M.C.L. § 123.1102. The court finds it unnecessary to engage in this exercise because the Llewellyn factors come into play only where "the city seeks to enter" . . . "the field of regulation" at issue. 401 Mich. at 322. In Llewellyn, and in the cases cited therein,[1] the municipal

---

[1] In its discussion of the four-factor preemption analysis, the Llewellyn Court cited Noey v. Saginaw, 271 Mich. 595 (1935) (ordinance regulating the hours during which alcoholic beverages could be sold preempted by state statute giving "sole right, power and duty to control the alcoholic beverage traffic" to the Liquor Control Commission); Walsh v. River Rouge, 385 Mich. 623 (1971) (ordinance granting curfew powers to mayor preempted by state statute

5

ordinance sought to regulate the very subject matter addressed by the state statute. This is not so in the present case because the ordinance in question does not regulate "the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms." Section 123.1102.

The ordinance at issue in this case is a zoning ordinance, pure and simple. The ordinance does not seek to regulate the purchase or sale of firearms, nor does it have this effect. Rather, the ordinance prohibits all uses in residential areas except those specifically permitted; and no commercial activities are authorized in such areas except libraries, parks, recreational facilities, golf courses, cemeteries, and temporary construction buildings. The incidental effect of the ordinance -- i.e., that plaintiff may not operate his business within an R-A zone -- does not conflict with the state statute. The Court in Llewellyn specifically noted that zoning ordinances generally are not incompatible with state regulatory statutes. After finding that the obscenity ordinance in that case was preempted by the state statute on the same subject, the Court went on to explain why the municipality could still regulate the location (as opposed to the operation) of defendants' business through zoning:

> Moreover, we do not mean to suggest in this opinion that a municipality is pre-empted from enacting ordinances outside the field of regulation occupied by the state statutory scheme governing criminal obscenity. For example, there is not the slightest indication

---

granting such powers to the governor); City of Grand Haven v. Grocer's Cooperative Dairy Co., 330 Mich. 694 (1951) (ordinance requiring milk sold within the city to be pasteurized within five miles of city limits preempted by state statute placing only a time limitation between pasteurization and sale); In re Lane, 58 Cal 2d 99 (1962) (ordinance criminalizing intercourse between unmarried persons preempted by similar state statute); Montgomery County Council v. Montgomery Ass'n, Inc., 274 Md. 52 (1975) (ordinances regulating campaign finance practices preempted by state election code).

6

> that the state Legislature acted in MCLA 750.343a *et seq.*; MSA 28.575(1) *et seq.* to preclude local zoning ordinances governing the location of establishments featuring "adult entertainment" such as that recently approved by the United States Supreme Court in *Young v American Mini Theaters, Inc*, 427 US 50; 96 S Ct 2440; 49 L Ed 2d 310 (1976).
>
> The Detroit ordinance challenged in *Young* involved zoning, not criminal prohibition, and "adult establishments" featuring erotica not defined in terms of obscenity. Clearly, then, such municipal regulation is outside of the state's present statutory scheme governing criminal obscenity. In addition, the need for uniformity which has been in part the foundation of our opinion today has little relevance to such zoning ordinances, which speak to a significant local need to regulate the location of "adult establishments" and which are primarily local in their effect."

401 Mich. at 330-31. See also id. at 320 ("Such municipal zoning ordinances are outside the field of prohibition occupied by the state statutory scheme").

The Llewellyn Court cited several cases in which zoning ordinances have been upheld when challenged on preemption grounds. See id. at 325 n.12. In City of Howell v. Kaal, 341 Mich. 585 (1954), for example, property owners were found to be in violation of a city ordinance when they operated a trailer park in an area of the city zoned R-A ("residential-agricultural"). Defendant argued that the ordinance was preempted by a state statute which provided for the licensing and regulation of trailer parks. In rejecting this argument, the Michigan Supreme Court stated: "The zoning ordinance here in question does not undertake to license, regulate or prohibit trailer coach parks. They are permitted in 3 zones in the city. . . . The zoning ordinance and its provisions zoning defendants' property as R-A are not in conflict with the statute and do not invade an area occupied by it." 341 Mich. at 590-91.

Similarly, in Oshtemo Charter Township v. Central Adver. Co., 125 Mich. App. 538 (1983), a township sued an advertising company which erected a sign without first obtaining a

building permit and approval of a site plan, as required by local ordinance. Defendant argued that the ordinances were preempted by a state statute which regulates outdoor signs. The Michigan Court of Appeals rejected this argument because the statute regulated "size, lighting, and spacing" of signs, whereas the ordinances addressed other, unrelated concerns. 125 Mich. App. at 541-42.

In like manner, the Michigan Supreme Court in <u>Gackler Land Co., Inc. v. Yankee Springs Township</u>, 427 Mich. 562, 579-80 (1986), concluded that a zoning ordinance which regulated the "conditions and locations of mobile homes outside mobile home parks" was not preempted by federal and state statutes which regulated the "construction and safety standards" of mobile homes. The Court agreed with both the trial court and the court of appeals that "standards concerning proper land use, which is the thrust of zoning laws," were distinct from, and perfectly compatible with, the statutes. <u>Id.</u> at 579.

In the present case, it is quite clear that the zoning ordinance is not preempted. The statute prohibits local units of government from regulating "the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition . . . or components of pistols or other firearms . . . ." The St. Clair Shores zoning ordinance imposes no such regulations. Rather, the ordinance simply limits, in a generally applicable manner, the types of uses which are permitted in residential areas. The incidental effect of this ordinance is to prevent plaintiff's business (and all other businesses which are not specifically included among the small number of "principal uses permitted") from operating within R-A zones. This effect is the same as that of the zoning ordinances in cases such as <u>Young, Kaal, Central Adver. Co.</u>, and <u>Gackler Land Co., Inc.</u>, in which the ordinances survived preemption challenges. The St. Clair Shores ordinance is not directed at firearms, but instead applies generally in prohibiting most commercial

8

activity within residential zones. Plaintiff does not contend that St. Clair Shores has zoned firearms dealers out of existence by zoning the entire city "residential" or that he could not conduct his business in compliance with the zoning ordinance by operating from within a commercially zoned area. While the zoning ordinance in this case may have an indirect effect upon plaintiff's business, the same could be said of the local building codes or local property tax assessments. If plaintiff's preemption argument were carried out to its logical conclusion, any ordinance with any effect on a firearms business would be preempted as well. The court cannot imagine that the Michigan legislature intended such an absurd result.

The court concludes that the St. Clair Shores Zoning Ordinance (specifically Article IV thereof) is not preempted by M.C.L. § 123.1102. Therefore, defendants did not err in denying plaintiff's application for renewal of his federal license as a firearms dealer on the grounds that plaintiff failed to comply with 18 U.S.C. § 923(d)(1)(F)(i). Accordingly,

IT IS ORDERED that defendants' motion for summary judgment on Count I of the complaint is granted.

IT IS FURTHER ORDERED that plaintiff's motion for declaratory judgment as to Count I of the complaint is denied.

BERNARD A. FRIEDMAN
UNITED STATES DISTRICT JUDGE

Dated: JAN 26 1999
Detroit, Michigan

9

COPIES MAILED TO: Kerry L. Morgan, Esq., Mary S. Ridgon, Esq.