# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KERRY L. MORGAN,

        Plaintiff,                       Case No. 05-73373

v.                                    Hon. Gerald E. Rosen

UNITED STATES DEPARTMENT OF
JUSTICE, BUREAU OF ALCOHOL,
TOBACCO, FIREARMS & EXPLOSIVES,

        Defendant.

_____/

## OPINION AND ORDER REGARDING
## <u>CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    <u>February 9, 2007</u>

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

## I. <u>INTRODUCTION</u>

Plaintiff commenced this action in this Court on August 31, 2005, seeking review of a decision by the Defendant United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives ("BATF") denying Plaintiff's application for renewal of his federal firearms license. This denial was based, at least primarily, upon the ground that dealing in firearms from Plaintiff's home in Redford Township, Michigan would be prohibited by the Township's zoning laws. Plaintiff now requests "de novo judicial

review" of this decision, leaving this Court with the task of determining whether "the Attorney General was . . . authorized to deny [Plaintiff's] application" for the renewal of his license.  18 U.S.C. § 923(f)(3).

Through the present cross-motions filed on May 8, 2006, both parties seek summary judgment in their favor.  The parties largely agree on the operative facts, but disagree as to:  (i) whether the Defendant agency properly deferred to the views of Redford Township officials regarding the correct interpretation of the relevant Township zoning ordinance, or instead should have undertaken an independent analysis of the meaning of this ordinance; (ii) whether the ordinance as interpreted by Township officials is preempted by a Michigan statute that limits the authority of local governments to regulate firearms, see Mich. Comp. Laws § 123.1102; and (iii) whether the Defendant agency impermissibly changed the basis for its denial of Plaintiff's renewal application, and thereby violated his right to due process.

These cross-motions have been fully briefed by the parties, and the Court heard oral argument on these motions on November 30, 2006.  Having reviewed the parties' briefs, the accompanying exhibits, and the record as a whole, and having considered the arguments of counsel at the November 30 hearing,[1] the Court now is prepared to rule on the parties' cross-motions.  This opinion and order sets forth the Court's rulings.

---

[1]Plaintiff, an attorney, is representing himself in this case.

2

## II.  <u>FACTUAL BACKGROUND</u>

Plaintiff Kerry L. Morgan first obtained a federal firearms license ("FFL") in 1993, authorizing him to deal in firearms from the premises at 20601 Sumner in Redford Township, Michigan.  This location, identified as the relevant "business address" on Plaintiff's FFL application, (<u>see</u> Admin. Record at 45), is a single-family home where Plaintiff lives with his wife and children, and the area in which it is located is classified by Redford Township as "residential."

In 1994, 1997, and 2000, Plaintiff timely applied for renewal of his FFL.[2]  On each occasion, Plaintiff filed the requisite certification stating that "[t]he business to be conducted under [his] Federal Firearms License is not prohibited by State or local law at the premises shown on" his FFL application.  (<u>See</u> Admin. Record at 56, 76, 87.)  In each instance, the Defendant agency approved Plaintiff's application and renewed his license.

Over the course of this period, however, BATF officials began to express concerns that Plaintiff's operation of a firearms business out of his home might violate local Redford Township zoning laws, at least as these laws were interpreted by Township officials.  In early 1995, for example, BATF inspector Stephen O. Patrick met with Plaintiff and informed him of his conversations with Leo Snage, the Redford Township Director of Public Services, and other Township officials who had opined that a firearms business would not be allowed in an R-1 residential area.  (<u>See</u> Admin. Record at 60.)  In

---

[2]Under the pertinent federal regulation, FFLs must be renewed every three years.  <u>See</u> 27 C.F.R. § 478.49.

apparent anticipation of this potential concern, Plaintiff secured an October 13, 1994

opinion letter from an attorney, Randall A. Pentiuk, stating that Plaintiff's operation of a

firearms business was a permissible "home occupation" within the meaning of the

pertinent Redford Township zoning ordinance, and that any contrary construction of this

local zoning ordinance would run afoul of state law.  (See id. at 63-65.)

During this same period, Plaintiff also sought a written opinion from the

Township's counsel in support of the Township's apparent position that "the operation of

a Class I Federal Firearms License from a Township residence is contrary to the

Township's zoning ordinance," (id. at 66), but he apparently was unsuccessful in this

effort.  Similarly, Plaintiff wrote to the Township supervisor and board of trustees on

January 22, 1995, complaining that Leo Snage and the Township's counsel had arrived at

and voiced their opinions regarding the proper meaning of the Township's zoning

ordinance without engaging in "any written legal analysis," informing these Township

officials that he had obtained a contrary legal opinion on this subject, and stating that he

had "advised the BATF that the Township is in error."  (Id. at 103.)  Notwithstanding the

apparently divergent views of Plaintiff and Redford Township officials regarding this

matter, and notwithstanding the opinions of at least some federal officials that Plaintiff's

operation of a firearms business from his home was prohibited by local law, (see id. at 60-

61, 97), the BATF approved Plaintiff's 1994, 1997, and 2000 renewal applications.[3]

_____

[3]In his submissions to the Court, Plaintiff opines that these BATF approvals reflected the
agency's legal determination that Plaintiff's reading of Redford Township zoning law was

Plaintiff did not enjoy similar success, however, with his most recent renewal effort in 2003. In this instance, BATF inspector Gail E. Sullivan sought and obtained a written opinion from Redford Township counsel that Plaintiff's operation of a firearms business from a home in a residential district was not a permitted use under the Township's zoning ordinance. (See Admin. Record at 99-102.) Accordingly, Inspector Sullivan recommended that Plaintiff's renewal application be denied, (see id. at 96-98), and the agency issued a Notice of Denial on November 24, 2003, stating that "[o]ur investigation reveals that dealing in Firearms from your premises would be in violation of local zoning laws," (see id. at 10-11).[4]

---

correct. In support of this assertion, Plaintiff cites a terse single-page June 16, 1995 BATF memo in which a recommended denial of Plaintiff's 1994 application was reversed following a "[c]ounsel's review" that found "no basis to deny the renewal of this firearms license at this time." (Id. at 75.) The Defendant agency disputes this reading of the June 16, 1995 memo, however, citing testimony at the recent administrative hearing that this memo most likely was meant to reflect the absence of a **written** statement from any Redford Township official that Plaintiff's operation of a firearms business from his home violated local zoning law. (See id. at 178-80.)

The Court finds it unnecessary to weigh in on this dispute. As noted by Defendant, Plaintiff has not cited any authority for the proposition that the BATF would somehow be "estopped" from denying Plaintiff's most recent application for renewal of his FFL because of any one-time agency opinion that his firearms business complied with local law. Rather, any such opinion would at most be merely probative evidence as to the proper interpretation of Redford Township zoning law. The relevance of this issue is addressed below.

[4]While Plaintiff's application for renewal was pending, he brought a mandamus action in this Court on the ground that the Defendant agency had failed to act upon his application within the requisite 60-day period. See 18 U.S.C. § 923(d)(2). In an opinion and order dated June 23, 2004, the Court granted the agency's motion to dismiss the case as moot, in light of the agency's subsequent (albeit untimely) decision in November of 2003 to deny Plaintiff's application. See Morgan v. United States Dep't of Justice, No. 03-74035 (E.D. Mich. June 23, 2004). This ruling was affirmed on appeal, and the Supreme Court recently denied Plaintiff's petition for a writ of certiorari.

5

On December 1, 2003, Plaintiff timely requested an administrative hearing to review the denial of his application to renew his FFL.  <u>See</u> 18 U.S.C. § 923(f)(2). Following a hearing on October 27, 2004, at which the parties introduced documentary evidence and the Defendant agency offered the testimony of several witnesses, Hearing Officer Mark A. Banas issued a November 26, 2004 report in which he recommended that Plaintiff's application be denied.  (<u>See</u> Admin. Record at 106-110.)  On July 21, 2005, the BATF issued its final decision denying Plaintiff's application to renew his FFL.  (<u>See</u> <u>id.</u> at 112-18.)  This suit followed on August 31, 2005, with Plaintiff seeking judicial review of the agency's adverse determination.

### III.  <u>ANALYSIS</u>

**A.    The Standards Governing the Parties' Cross-Motions**

Through the present cross-motions, each side seeks summary judgment in its favor as to the validity of the Defendant agency's decision to deny Plaintiff's application for renewal of his federal firearms license.  Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As evidenced by their cross-motions, the parties agree that this case is amenable to disposition via summary judgment, and their points of disagreement concern purely legal issues that the Court properly may resolve as a matter of law.

The statutory provision under which Plaintiff has brought this action, 18 U.S.C. §
923(f)(3), provides for "de novo judicial review" of the denial of an application for a
federal firearms license.  In conducting this review, the Court's task is to determine
whether "the Attorney General was . . . authorized to deny the application" under the
standards governing federal firearms licensing.  18 U.S.C. § 923(f)(3).  The Court need
not confine its review solely to the record compiled during the underlying administrative
hearing, but instead "may consider any evidence submitted by the parties to the
proceeding."  18 U.S.C. § 923(f)(3).  Yet, because the statute is permissive, stating only
that the Court "may" consider additional evidence, a "trial de novo" is not required in
every case, and the district courts instead have "the discretion to receive additional
evidence to be considered along with that in the administrative record when some good
reason to do so either appears in the administrative record or is presented by the party
petitioning for judicial review."  Stein's Inc. v. Blumenthal, 649 F.2d 463, 466 (7th Cir.
1980) (citation and footnote omitted).[5]

The courts have expressed some uncertainty as to the precise nature of the judicial
scrutiny called for under § 923(f)(3).  While this provision mandates "de novo" review, it
limits this review to the question whether the denial of an application was "authorized."
The courts have construed the former language as meaning that the decision under review

_____

[5]In this case, the parties have submitted very little evidence that lies outside of the
administrative record.  Upon reviewing these supplemental materials, the Court finds that they
have little, if any, bearing upon the proper disposition of the legal issues presented in this case,
but at most tend to shed further light on the arguments advanced by the parties.

"is not necessarily clothed with any presumption of correctness or other advantage," but that the Attorney General's findings should only be given "such weight as [the court] believes they deserve in light of the evidence in the administrative record and the evidence, if any, the district court receives to supplement that record."  Stein's Inc., 649 F.2d at 466-67 (internal quotation marks, alteration, and citation omitted); see also 3 Bridges, Inc. v. United States, 216 F. Supp.2d 655, 657 (E.D. Ky. 2002); Cisewski v. Department of Treasury, 773 F. Supp. 148, 150 (E.D. Wisc. 1991).  Yet, by confining a court's inquiry to the narrow question whether the Attorney General's decision was "authorized," § 923(f)(3) "does not call upon this Court to decide whether it would revoke the license in it[]s own judgment, but whether all of the evidence presented is sufficient to justify the Attorney General's revocation of the license."  Pinion Enterprises, Inc. v. Ashcroft, 371 F. Supp.2d 1311, 1315 (N.D. Ala. 2005); see also Procaccio v. Lambert, No. 5:05-MC-0083, 2006 WL 2090166, at *2 (N.D. Ohio July 25, 2006) ("[T]he Court considers whether the Attorney General's revocation was authorized, not whether this Court would make the same decision if originally presented with the issue."); Francis v. United States Bureau of Alcohol, Tobacco & Firearms, No. 05-380-RAW, 2006 WL 1047026, at *2-*3 (E.D. Okla. Apr. 20, 2006) (emphasizing that the standard of review under § 923(f)(3) "is quite narrow").

**B.   The Defendant Agency Appropriately Sought and Deferred to the Opinions of Redford Township Officials in Determining Whether Plaintiff's Operation of a Firearms Business Violated the Township's Zoning Laws.**

In denying Plaintiff's application for renewal of his FFL, the Defendant agency

determined that Plaintiff's operation of a firearms business from his Redford Township home would violate the Township's zoning laws as construed by Township officials.[6] Through his present motion, Plaintiff contends that this interpretation of Redford Township's zoning ordinance is incorrect as a matter of law. The Court agrees with Defendant, however, that no independent construction of local zoning law is called for here, whether by the agency or by this Court, and that Defendant acted within its statutory authority by seeking and deferring to the opinions of local officials on this issue.

Under the pertinent statutory provision, an application for an FFL "shall be approved" if the applicant satisfies a number of requirements. 18 U.S.C. § 923(d)(1). Of particular relevance here, the applicant must "certif[y] that . . . the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premises is located." 18 U.S.C. § 923(d)(1)(F)(i). In light of this statutory requirement, the Defendant agency has developed and promulgated ATF Form 5300.37, entitled "Certification of Compliance with State and Local Law," which the applicant must complete and sign under penalty of perjury. See 27 C.F.R. § 478.47(b)(6). In this case, all are agreed that Plaintiff provided the requisite certification in support of his 2003 application for renewal of his FFL. (See Admin. Record at 7.)[7]

---

[6]Defendant's final decision appears to suggest an additional ground for denying Plaintiff's application, beyond the determination that his firearms business did not comply with local law. The significance of this additional finding is addressed below.

[7]To be accurate, the record does not appear to include a completed ATF Form 5300.37 in support of Plaintiff's 2003 renewal application. Instead, the record contains Plaintiff's response on a "Renewal Application Questionnaire," attesting under penalty of perjury that the firearms

The applicant's own certification is not the end of the matter, however.  Rather, under a regulation promulgated by the Defendant agency, the Chief of the BATF's National Licensing Agency is directed to determine "through further inquiry or investigation, or otherwise," whether an applicant has established his entitlement to an FFL by satisfying the statutory criteria for such a license.  27 C.F.R. § 478.47(a).  Pursuant to this regulation, "[t]he ATF's National Licensing Center has the responsibility to investigate and ensure that an applicant for a license is qualified," and this encompasses the "duty to ensure the truthfulness of statements made on an application for a federal firearms license."  Fattahi v. Bureau of Alcohol, Tobacco & Firearms, 195 F. Supp.2d 745, 747 n.5 (E.D. Va. 2002), aff'd, 328 F.3d 176 (4th Cir. 2003).

As part of its "inquiry or investigation" in this case, the Defendant agency contacted Redford Township officials and was advised that Plaintiff's operation of a firearms business from his home in an area zoned as R-1 residential would contravene the Township's zoning ordinance.  (See Admin. Record at 99-102.)  Specifically, in a September 23, 2003 letter to Redford Township's Director of Public Services, Leo Snage,

---

activity to be conducted at his home was not prohibited by State or local law.  (Admin. Record at 7.)  Defendant does not contend that Plaintiff failed to submit any required certification in support of his 2003 application, nor does the agency cite any such failure as a ground for denying this application.

While the record is perhaps incomplete as to Plaintiff's most recent application, it does include certifications of compliance in support of Plaintiff's 1994 and 2000 license renewals.  (See id. at 56, 87.)  Interestingly, the record also reflects Plaintiff's *affirmative* response in 1994 to the question whether any zoning ordinances prohibited the conduct of a firearms business at his Redford Township home.  (See id. at 48.)  Plaintiff evidently changed this answer from "yes" to "no" upon the advice of attorney Randall A. Pentiuk that he should do so.  (See id. at 64.)

10

which in turn was forwarded to the BATF, Township counsel Owen J. Cummings stated:

> I spoke at length on Friday, September 19th, with Gail Sullivan of the Bureau of Alcohol, Tobacco and Firearms. I have indicated to Ms. Sullivan that it is the position of the Zoning Administrator in Redford Township that the sale of firearms from a home in a residential district is not a permitted use in Redford Township. In doing so, I indicated to Ms. Sullivan that the Zoning Administrator pointed out to me that a home occupation is contained under the definitions of accessory use. A[n] "accessory use" is a use which is clearly incidental to, customarily found in connections with, and (except in the case of accessory off-street parking spaces or loading) located on the same zoning lot as, the principal use to which it is related.
>
> It is obvious that the sale of small arms is not customarily found in connection with the use of residential premises. That ordinance goes on to speak to accessory uses and listing some. Under that listing, no. 5 is that of home occupations, consisting of an occupation or profession carried on by not more than one (1) member of the family residing in the residence and requiring no structural change or alteration which would diminish the residential character of the dwelling and/or residence.
>
> Sale of goods from a home is not a home occupation. Historically, home occupations were that of seamstress, laundress, piano teachers, dentistry and other single practitioner-type of professional persons.
>
> Ms. Sullivan asked me if the Township would continue to take this position in the event that an applicant would ask for a hearing on this request. I told Ms. Sullivan it is my understanding that the Township would participate with her Bureau in defending their position.

(Id. at 99.) In reliance on this opinion regarding Redford Township's zoning ordinance,

Defendant denied Plaintiff's application for renewal of his FFL, both initially and

following an administrative hearing. (See id. at 11, 115.)

In support of his pending summary judgment motion, Plaintiff argues that the

Township and its counsel "fabricated" a prohibition against sales that is nowhere to be

found in the language of the Township zoning ordinance, and that Defendant was "wrong as a matter of law" in electing to rely upon "the Township's fabrication." (Plaintiff's Motion, Br. in Support at 7-9.) Regarding the former, Plaintiff begins with the proposition, as recognized by the Township's counsel in the above-quoted letter, that the Redford Township zoning ordinance permits "accessory uses" on property zoned as R-1 residential. (See Redford Township Zoning Ordinance, § 4.01(D).) The ordinance, in turn, defines "accessory uses" as follows:

> An "accessory use" is a use which is clearly incidental to, customarily found in connection with, and (except in the case of accessory off-street parking spaces or loading) located on the same zoning lot as the principal use to which it is related.

(Id. at § 1.02.) The ordinance then lists examples of accessory uses, including one that the parties agree is the most pertinent here: "[h]ome occupations, consisting of an occupation or profession carried on by not more than one (1) member of the family residing in the residence and requiring no structural change or alteration which would diminish the residential character of the dwelling and/or residence." (Id.) Plaintiff contends that the Township and its counsel impermissibly went beyond this plain language by limiting "home occupations" to those that "[h]istorically" have been performed in private residences, and by flatly precluding any occupations that entail the sale of goods.

Yet, before the Court may reach this question as to the proper construction of the Redford Township zoning ordinance, Plaintiff first must identify a legal basis for the

12

Court to do so.  Unfortunately, Plaintiff's written submissions largely fail to acknowledge this concern, much less suggest an answer.  At oral argument, however, Plaintiff asserted that the Court's power to independently construe local zoning law is inherent in the "de novo" review called for under the federal firearms statute, 18 U.S.C. § 923(f)(3).  Plaintiff reasons that this Court's "de novo" review must entail a wholly independent inquiry whether he has satisfied the various prerequisites for license renewal, including the requirement that his firearms business not be "prohibited by State or local law in the place where the licensed premises is located."  18 U.S.C. § 923(d)(1)(F)(i).  This independent inquiry, in Plaintiff's view, necessarily must encompass a "de novo" determination whether local law, properly construed, permits or forbids the operation of such a business from the licensed premises.

    The Court perceives two separate problems with Plaintiff's understanding of the "de novo" review authorized by the federal firearms statute.  First, even assuming, for the moment, that the Defendant agency's decision, underlying reasoning, and license approval process were wholly immaterial to this Court's review, it would be highly unusual for this Court to determine what state or local law forbids without regard for, and due deference to, the views of state and local authorities on the subject.  In the ordinary course of its rulings on matters of state law, for example, this Court must defer to the decisions of the state's highest court, and generally will follow the decisions of inferior state courts unless convinced that the state's highest court would rule otherwise.  See Ziebart International Corp. v. CNA Insurance Cos., 78 F.3d 245, 250-51 (6th Cir. 1996).

13

Thus, the concept of "de novo" review does not confer upon this Court the freestanding authority to decide for itself what a state or local enactment might allow or prohibit. Rather, as a starting point, at least, the Court would consult the very same source that the Defendant agency looked to in this case — namely, the local authorities. All other things being equal, then, as between Plaintiff's reading of the Redford Township zoning ordinance and the interpretation advanced by the Township's zoning administrator and attorney, the latter ordinarily would be entitled to greater weight. Plaintiff has failed to even acknowledge this usual rule, much less suggest why it should not apply here.

Next, and more importantly, the Court already has observed that its "de novo" review is limited by statute to the question whether the Defendant agency's denial of Plaintiff's application was "authorized." 18 U.S.C. § 923(f)(3). Plainly, this inquiry is different from — and, as the courts have explained, considerably narrower than, see, e.g., Pinion Enterprises, 371 F. Supp.2d at 1315 — the question whether the agency's decision was "correct" under a court's entirely independent assessment of the record and the pertinent federal, state, and local law. Thus, it does not matter whether this Court, in its independent judgment upon conducting its own analysis, would agree with, adopt, or favor Plaintiff's reading of the Redford Township zoning ordinance over the construction advanced by Township officials. It matters only whether Defendant was "authorized" to proceed as it did — namely, by soliciting the views of Township officials regarding the lawfulness of operating a firearms business from a home in an R-1 residential district, and by acting in reliance on the opinion provided in response to this inquiry.

14

To the extent that Plaintiff even hints at the possible criteria that the Defendant agency must satisfy to reach an "authorized" decision, he appears to suggest that the agency has at least some duty in each and every case to independently analyze and "confirm . . . the accuracy" of a local government official's interpretation of local law. (Plaintiff's Motion, Br. in Support at 8.)  In the Court's view, however, such a proposed rule goes too far.  Just as this Court defers to the state courts and other relevant authorities as to issues of state and local law, the Defendant agency surely should be permitted to do so as well.  If, for example, Michigan's highest court had issued a decision construing an ordinance that was materially indistinguishable from the Redford Township ordinance at issue here, the Defendant agency surely could have permissibly relied upon this definitive statement of the law without need for further inquiry or analysis.  Indeed, if the agency were to proceed otherwise and construe the ordinance in a manner contrary to a ruling of the Michigan Supreme Court, it certainly could be said that the agency acted in an "unauthorized" manner by disregarding a state court's considered judgment on a matter of state law and arrogating to itself the function of deciding what state or local law permits or forbids.

To be sure, the legal opinion upon which Defendant relied in this case is a good deal less definitive than a state court ruling.  Yet, Plaintiff fails to suggest what steps Defendant might have taken to secure a "better" or more definitive interpretation of the Redford Township zoning ordinance — beyond, of course, merely accepting *his* proposed construction.  In particular, Plaintiff has not identified any avenue for the BATF to seek

15

an administrative or judicial construction of the ordinance by some local or state agency

or court.  Rather, Plaintiff apparently wishes to impose upon Defendant the obligation to

perform some sort of independent legal analysis, at least in cases where, in his judgment,

the opinion provided by a local government official is deficient on its face.  Given

Plaintiff's willingness to ascribe malignant motives to the Defendant agency, (see, e.g.,

Plaintiff's Motion, Br. in Support at 11 & n.6 (accusing Defendant of pursuing the

"political goal of simply reducing the number of federal firearms licensees" by

"collud[ing] with local governments to deny valid applications")), it is not clear why he

believes that such an independent agency analysis would be preferable to the course

pursued by Defendant in this case.  In any event, the Court finds no basis for concluding

that Defendant's chosen method of ascertaining the meaning of the Redford Township

zoning ordinance was "unauthorized," and hence provides a ground for overturning

Defendant's denial of Plaintiff's application for renewal of his FFL.

In contrast, and as Defendant points out, Plaintiff *did* have legal avenues available

to him for challenging the correctness of the opinion produced by Redford Township

officials in response to Defendant's inquiry.  Under Michigan's Township Zoning Act,

any township that enacts a zoning ordinance must appoint a "township board of appeals,"

Mich. Comp. Laws § 125.288(1), and this body, in turn, has the duty to "hear and decide

appeals from and review any order, requirement, decision, or determination made by an

administrative official or body charged with enforcement of an ordinance adopted

pursuant to" the Act, Mich. Comp. Laws § 125.290(1).  While Plaintiff complains that the

16

Township failed at various points in the past to respond to his requests for a written statement of its opinion regarding the proper interpretation of its zoning ordinance, it is clear that the Township *did* provide such a written opinion in connection with Plaintiff's most recent renewal application.[8]  It does not appear that Plaintiff has made any effort to appeal this determination to the Redford Township board of appeals, and neither has he suggested any reason why he could not do so.  Having failed to pursue this available avenue for demonstrating the error in the Township's interpretation of its zoning ordinance, Plaintiff cannot be heard to complain that the Defendant agency accepted this interpretation as the most recent and definitive word on the subject.

In the end, Plaintiff merely invites the Court to accept his reading of the Redford Township zoning ordinance as purportedly more faithful to the plain language of this enactment.  As explained, however, this is not the question before the Court.  Rather, if Defendant's decision was "authorized" under the terms of the federal firearms licensing statute, then the Court's inquiry is at an end.  Implicit in the Defendant agency's power to grant or deny FFL applications is the authority to inquire and investigate whether an applicant has satisfied all of the statutory requirements for a license — and, as noted, this investigative duty is made explicit in the BATF regulations adopted in the exercise of the

---

[8]The Township's past failures to provide written confirmation of its views are irrelevant here, of course, where Plaintiff's past applications for renewal of his FFL were ***approved*** despite the verbal statements of Township officials that his operation of a firearms business from his home violated the Township's zoning ordinance.  Indeed, according to Defendant, these past approvals were based, at least in part, upon Defendant's inability to identify any documentary proof of the Township's position regarding Plaintiff's compliance or non-compliance with the zoning ordinance.

17

agency's statutory authority.  See 27 C.F.R. § 478.47(a).  The agency surely is due some

deference in determining the appropriate means of investigating an applicant's

compliance with the statutory requirements for an FFL, and Plaintiff has not explained,

beyond his unsupported and wholly speculative claims of hidden agendas and collusion,

how Defendant might have abused this discretion by soliciting the views of Township

officials regarding the proper meaning of a Township ordinance.

Conceivably, there could be cases where a local official's representations as to

local law might be so implausible, unreasoned, arbitrary, or inconsistent with the

language of an underlying enactment as to defeat any claim of reasonable reliance.  The

opinion at issue here, however, was provided by an attorney, supported by citation to the

language of the ordinance, and accompanied by at least some explanation of the reasoning

that led to counsel's conclusion.  Under these circumstances, the Court finds that

Defendant was "authorized" to rely upon this opinion as a basis for concluding that

Plaintiff's operation of a firearms business from his Redford Township residence was

"prohibited by . . . local law in the place where the licensed premises is located."  18

U.S.C. § 923(d)(1)(F)(i).

**C.   Redford Township's Zoning Ordinance, as Construed by Township Officials, Is Not Preempted by Mich. Comp. Laws § 123.1102.**

Apart from asserting that the interpretation of the Redford Township zoning

ordinance by Township officials was wrong, Plaintiff also contends that this interpretation

ran afoul of a Michigan statute, Mich. Comp. Laws § 123.1102, that limits the ability of

18

local governments to regulate the ownership, sale, or possession of firearms. Again, this argument presumes that the Defendant agency was obligated to engage in this sort of state-law preemption analysis as part of its determination whether Plaintiff's operation of a firearms business from his home was prohibited by local law, as opposed to merely relying on the opinions of local officials and leaving Plaintiff to pursue any appeals or other remedies that might be available under Michigan law to challenge a township's construction of its zoning ordinance. And, of course, Plaintiff's argument also rests on the premise that Defendant's failure to engage in this sort of state-law preemption analysis resulted in an "unauthorized" decision that may be overturned by this Court. Yet, even accepting these premises, for present purposes only, the Court readily concludes that Plaintiff's claim of preemption lacks merit.

The Michigan statute which, in Plaintiff's view, preempts the Township's proffered construction of its zoning ordinance provides as follows:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

Mich. Comp. Laws § 123.1102. Plaintiff contends that Redford Township's zoning ordinance, as construed by Township officials, runs afoul of this statute by regulating — and, in fact, outright prohibiting — the sale of firearms from premises located in R-1 residential districts.

19

As Plaintiff recognizes, Chief Judge Friedman of this District rejected this same argument under facts and circumstances that are materially indistinguishable from those presented here.  In <u>Yenson v. United States Dep't of Treasury</u>, No. 98-70262 (E.D. Mich. Jan 26, 1999), the defendant BATF denied the plaintiff's application for renewal of his FFL on the ground that his operation of a firearms business from his private residence in St. Clair Shores, Michigan, was prohibited by the city's zoning ordinance.[9]  The plaintiff in that case, like Plaintiff here, argued that the city's zoning ordinance impermissibly regulated the sale of firearms in violation of Mich. Comp. Laws § 123.1102.  In an unpublished decision, Judge Friedman rejected this claim of preemption:

> The ordinance at issue in this case is a zoning ordinance, pure and simple.  The ordinance does not seek to regulate the purchase or sale of firearms, nor does it have this effect.  Rather, the ordinance prohibits all uses in residential areas except those specifically permitted; and no commercial activities are authorized in such areas except libraries, parks, recreational facilities, golf courses, cemeteries, and temporary construction buildings.  The incidental effect of the ordinance — i.e., that plaintiff may not operate his business within an R-A [one-family residential] zone — does not conflict with the state statute . . . .

> * * * *

> In the present case, it is quite clear that the zoning ordinance is not preempted.  The statute prohibits local units of government from regulating "the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition . . . or components of pistols or other firearms . . . ."  The St. Clair Shores zoning ordinance imposes no such regulations.  Rather, the ordinance simply limits, in a generally applicable manner, the types of uses which are permitted in residential areas.  The incidental effect of this ordinance is to prevent

---

[9]Notably, Plaintiff served as counsel for the plaintiff in that case.

plaintiff's business (and all other businesses which are not specifically included among the small number of "principal uses permitted") from operating within R-A zones. This effect is the same as that of the zoning ordinances in [several prior Michigan cases], in which the ordinances survived preemption challenges. The St. Clair Shores ordinance is not directed at firearms, but instead applies generally in prohibiting most commercial activity within residential zones. Plaintiff does not contend that St. Clair Shores has zoned firearms dealers out of existence by zoning the entire city "residential" or that he could not conduct his business in compliance with the zoning ordinance by operating from within a commercially zoned area. While the zoning ordinance in this case may have an indirect effect upon plaintiff's business, the same could be said of the local building codes or local property tax assessments. If plaintiff's preemption argument were carried out to its logical conclusion, any ordinance with any effect on a firearms business would be preempted as well. The court cannot imagine that the Michigan legislature intended such an absurd result.

Yenson, slip op. at 6-9.

In so ruling, the court relied on a line of Michigan Supreme Court preemption decisions that have distinguished between a municipality's direct attempt to enter into a field of regulation occupied by a state statutory scheme and a municipal enactment that has only an indirect effect upon the subject matter addressed in a state regulatory scheme. In People v. Llewellyn, 401 Mich. 314, 257 N.W.2d 902, 903 (1977), for example, the Michigan Supreme Court held that a local anti-obscenity ordinance was preempted by a "comprehensive" state statutory scheme regulating this same subject area. In so ruling, the court stated that "[a] municipality is precluded from enacting an ordinance if 1) the ordinance is in direct conflict with the state statutory scheme, or 2) if the state statutory scheme preempts the ordinance by occupying the field of regulation which the municipality seeks to enter, to the exclusion of the ordinance, even where there is no

21

direct conflict between the two schemes of regulation."  Llewellyn, 257 N.W.2d at 904

(footnotes with citations omitted).  The court then concluded that the local anti-obscenity

ordinance at issue ran afoul of the second of these forms of preemption, as it reflected the

municipality's attempt to enter a field occupied by a broad state statutory scheme.  257

N.W.2d at 906-08.

> Nonetheless, the court emphasized an important limit to its holding:
>
> > . . . [W]e do not mean to suggest in this opinion that a municipality is
> > preempted from enacting ordinances outside the field of regulation
> > occupied by the state statutory scheme governing criminal obscenity.  For
> > example, there is not the slightest indication that the state Legislature acted
> > in [the state anti-obscenity statute] to preclude local zoning ordinances
> > governing the location of establishments featuring "adult entertainment"
> > such as that recently approved by the United States Supreme Court in
> > *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49
> > L.Ed.2d 310 (1976).
> >
> > The Detroit ordinance challenged in *Young* involved zoning, not
> > criminal prohibition, and "adult establishments" featuring erotica not
> > defined in terms of obscenity.  Clearly, then, such municipal regulation is
> > outside of the state's present statutory scheme governing criminal
> > obscenity.  In addition, the need for uniformity which has been in part the
> > foundation of our opinion today has little relevance to such zoning
> > ordinances, which speak to a significant local need to regulate the location
> > of "adult establishments" and which are primarily local in their effect.

257 N.W.2d at 908-09 (footnote omitted).

Judge Friedman's opinion in Yenson also discussed the Michigan Supreme Court's

ruling in City of Howell v. Kaal, 341 Mich. 585, 67 N.W.2d 704 (1954), in which the

defendant property owners advanced various challenges to a municipal ordinance that

precluded them from operating a trailer park on land zoned as R-A (residential-

22

agricultural).  Among other arguments, the defendants contended that this zoning

ordinance was preempted by a state statutory scheme providing for the licensing and

regulation of trailer parks.  The Michigan Supreme Court disagreed:

> The substance of the holdings in [three prior Michigan Supreme Court
> cases] is to the effect that a city ordinance in conflict with a statute is to that
> extent invalid, that an ordinance may not invade a field completely
> occupied by statute but may enter an area not pre-empted by the state act,
> [and] that what the state law expressly permits an ordinance may not
> prohibit . . . .  The zoning ordinance here in question does not undertake to
> license, regulate or prohibit trailer coach parks.  They are permitted in three
> zones in the city . . . .  The zoning ordinance and its provisions zoning
> defendants' property as R-A are not in conflict with the statute and do not
> invade an area occupied by it.

Kaal, 67 N.W.2d at 707; see also Gackler Land Co. v. Yankee Springs Township, 427

Mich. 562, 398 N.W.2d 393, 400-01 (1986) (rejecting a claim that a zoning ordinance

restricting mobile or manufactured homes to mobile parks was preempted by federal and

state statutes establishing construction and safety standards for manufactured homes, and

reasoning that these enactments did not conflict because "[t]he requirements of the zoning

ordinance in the case at bar are not standards regulating the construction and safety of

mobile homes" but instead "have for their purpose the regulation of where mobile homes

may be placed and under what conditions").

    As Judge Friedman reasoned in Yenson, this line of Michigan Supreme Court

precedent militates strongly against the preemption argument advanced in that case (and

again by Plaintiff here).  There is no question that, through the enactment of Mich. Comp.

Laws § 123.1102, the Michigan Legislature meant to occupy the field of firearms

regulation and preclude local governments from entering into this area.  Yet, as the Michigan Supreme Court has repeatedly recognized, zoning ordinances of general application which merely regulate the ***location*** of certain categories of businesses, activities, or dwellings are not properly viewed as "entering into" an underlying substantive field of regulation governing a particular type of business, activity, or dwelling — *e.g.,* adult entertainment (in <u>Llewellyn</u>), trailer parks (in <u>Kaal</u>), or mobile homes (in <u>Gackler Land Co.</u>).  Accordingly, this Court agrees with Judge Friedman that the zoning ordinance at issue here, like the one under consideration in <u>Yenson</u>, is not preempted by Mich. Comp. Laws § 123.1102 as "pertaining to . . . or regulat[ing]" the purchase or sale of firearms merely because it prohibits the operation of a firearms business (as well as all other business activities outside the scope of "home occupations") on land zoned as R-1 residential.

Nonetheless, apart from noting that this Court is not bound to follow <u>Yenson</u>, Plaintiff insists that Judge Friedman's ruling in that case has been undermined by subsequent Michigan court decisions.  In particular, Plaintiff relies on the recent ruling in <u>Michigan Coalition for Responsible Gun Owners v. City of Ferndale</u>, 256 Mich. App. 401, 662 N.W.2d 864, 866 (2003), in which the Michigan Court of Appeals held that Mich. Comp. Laws § 123.1102 preempted a City of Ferndale ordinance banning the possession or concealment of weapons in municipal buildings.  In so ruling, the court first found that § 123.1102 triggered the second form of preemption cited by the Michigan Supreme Court in <u>Llewellyn</u>, <u>supra</u>, in that it expressly and completely occupies the field

24

of firearms regulation "to the exclusion of local units of government."  Michigan

Coalition, 662 N.W.2d at 871-72.  The court then stated:

> In the present case, it is readily apparent that the Ferndale ordinance
> regulates areas that § 1102 expressly prohibits.  Section 1102 provides that
> a local unit of government shall not enact an ordinance pertaining to the
> transportation or possession of firearms, but the city of Ferndale [ordinance]
> does just that.  Despite the clear language of the Legislature, amicus curiae
> contends in a conclusory fashion that § 1102 should not preempt ordinances
> like the Ferndale ordinance because the statute "is not clearly aimed at
> municipal control of activities within the confines of its own public
> buildings."  However, the language of § 1102 is broad and all-
> encompassing.  A state statute that prohibits a local unit of government
> from enacting "any ordinance or regulation" or regulating "in any other
> manner" the transportation or possession of firearms cannot reasonably be
> interpreted to exclude local ordinances that address the carrying of firearms
> in municipal buildings.

662 N.W.2d at 872.

Michigan Coalition is readily distinguishable, and does nothing to undermine

Judge Friedman's or this Court's reliance on the line of Michigan Supreme Court cases

recognizing that zoning ordinances typically cannot be viewed as "entering into"

substantive fields of regulation governing specific types of businesses, activities, or

dwellings.  The municipal ordinance at issue in Michigan Coalition specifically and

expressly regulated firearm possession, and the Michigan Court of Appeals merely

observed that this explicit attempt at firearms regulation was not saved by its narrow

limitation to municipal buildings.  Here, in contrast, Redford Township's zoning

ordinance says *nothing at all* about firearm possession, ownership, purchase, sale, or any

other form of firearms regulation, but merely has, at most, an indirect effect upon firearms

25

transactions by limiting firearms businesses (and all other comparable businesses that do not constitute "home occupations") to certain portions of the Township and excluding them from others.  As Judge Friedman held in Yenson, such an ordinance does not impermissibly "enter into" the field of firearms regulation that the Michigan Legislature completely occupied through its enactment of § 123.1102.

Thus, even assuming that the Michigan Court of Appeals had the authority to overturn the above-cited Michigan Supreme Court precedent — and it plainly does not — there is no inconsistency whatsoever between the ruling in Michigan Coalition and the preemption decisions in Llewellyn, Kaal, and Gackler Land Co.  Consequently, the more recent Michigan Coalition decision provides no basis for this Court to deviate from Judge Friedman's well-reasoned ruling in Yenson that § 123.1102 does not preempt a local zoning ordinance that prohibits the operation of a firearms business (and other comparable business activities) on land zoned as residential.[10]

_____

[10]Although Plaintiff cites two other recent Michigan court rulings as purportedly undermining the decision in Yenson, neither merits extended discussion.  First, the ruling in Frens Orchards, Inc. v. Dayton Township Board, 253 Mich. App. 129, 654 N.W.2d 346, 350 (2002), contributes nothing to the Court's inquiry here, where the court in that case found that the state statutory scheme cited by the plaintiff was "not so pervasive that it would support a finding of preemption."  Here, in contrast, the Court does not in any way deny the preemptive effect of § 123.1102, but simply concludes that the Redford Township zoning ordinance does not enter into the field occupied by this state statute.  Next, while Plaintiff cites Mack v. City of Detroit, 467 Mich. 186, 649 N.W.2d 47, 52 (2002), for the proposition that a municipality's power to enact ordinances is subject to and limited by the Michigan Constitution and state statutes, this same principle was expressly recognized in Llewellyn, 257 N.W.2d at 904, and indeed was the starting point of the court's discussion of preemption in that case.

Finally, the Court deems it necessary to touch only briefly upon Plaintiff's contention that Redford Township officials "entered into" the field of firearms regulation that the state

**D.      The Additional Reasoning that Was Erroneously Included in the Defendant Agency's Final Decision Does Not Give Rise to a Due Process Violation for Which Relief Is Warranted.**

As his next ground for seeking the reversal of the Defendant agency's decision denying his application to renew his FFL, Plaintiff contends that Defendant violated his right of due process by addressing an issue in its final decision that was never before raised by either party throughout the course of the administrative proceedings.  Under these circumstances, Plaintiff argues that he lacked notice of or a reasonable opportunity to challenge at least one of Defendant's grounds for denying his application.  While the Court agrees that Defendant's final decision is erroneous in this regard, it cannot agree that this constitutes a due process violation or otherwise warrants any award of relief, where Defendant readily acknowledges its error and has demonstrated to the Court's satisfaction that its decision is independently supportable on a ground of which Plaintiff was amply aware.

As is evident from the parties' briefs and the administrative record, the success of

---

reserved to itself in § 123.1102 by deliberately construing the Township's zoning ordinance in a way that was intended to sharply limit the number of firearms businesses operating within the Township.  First, Plaintiff has failed to cite any authority in support of his novel theory that a municipal ordinance may be preempted by virtue of how it is applied in a particular case, as opposed to on the basis of what the ordinance actually says.  It also is noteworthy that Plaintiff has not identified any inconsistent application of the ordinance by Township officials — there is no evidence, for example, that the Township has construed the ordinance's "home occupation" language more broadly in other cases to permit other sorts of businesses to operate out of residences.  Finally, and most importantly, the Court again reminds Plaintiff that it is the decision of the ***Defendant agency*** that is under review here.  Plaintiff has not suggested any basis for the Court to impose upon Defendant the duty to ferret out any purportedly improper motives or hidden agendas that might lurk behind a local official's statement of what local law permits or forbids.

27

Plaintiff's renewal application hinged upon the question whether his operation of a firearms business from his home was prohibited by Redford Township's zoning ordinance. This was the sole issue addressed in the Defendant agency's initial notice of its decision denying Plaintiff's application, (see Admin. Record at 10-11); it was the sole issue addressed in Plaintiff's subsequent request for an administrative hearing, (see id. at 15-16); it was the sole focus of the evidence and testimony presented at the ensuing administrative hearing; and it was the sole issue addressed in the hearing officer's report recommending that Plaintiff's application be denied, (see id. at 106-10.) Yet, in its final decision issued on July 21, 2005, the Defendant agency not only found that Plaintiff's operation of a firearms business from his home violated the Redford Township zoning ordinance, but *also* concluded that Plaintiff had willfully violated the Gun Control Act by maintaining a business that he purportedly knew to be in violation of the Township ordinance. (See id. at 115-17.) Such a willful violation provides a separate basis for revoking a federal firearms license, but only after the licensee is given "notice and opportunity for hearing." 18 U.S.C. § 923(e). As Plaintiff correctly points out, Defendant gave no such "notice and opportunity for hearing" here, where the issue of willful violation was never raised or addressed in the course of the administrative proceedings.

Be that as it may, the Court sees no benefit to analyzing this matter under generalized due process principles, where the very same statutory provision that confers a right of judicial review, 18 U.S.C. § 923(f)(3), also grants this Court sufficiently broad

28

authority to both address the Defendant agency's transgression and fashion an appropriate remedy.  First, and as discussed at length earlier, this provision directs the Court to determine whether "the Attorney General was . . . authorized to deny the application."  18 U.S.C. § 923(f)(3).  This Court readily concludes, and other courts have found, that an unsupported finding of a "willful violation" would be subject to reversal under this provision.  See, e.g., Rich v. United States, 383 F. Supp. 797, 801-02 (S.D. Ohio 1974) (setting aside the revocation of a license where the evidence established only negligence and not a willful violation).  In this case, it can hardly be said that the Defendant agency met its burden of establishing a willful violation, where it did not even attempt such a showing throughout the course of the administrative proceedings.

In this event, where at least one aspect of a decision by the Defendant agency is deemed to be unsupported, and hence "not authorized," § 923(f)(3) dictates that "the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court."  Yet, while Plaintiff goes on at length about the lack of notice and opportunity to address the Defendant agency's spurious finding of a willful violation, he notably fails to offer any sort of cogent argument as to a suitable remedy for this error.  Rather, he merely asserts in wholly conclusory fashion that the Court should declare Defendant's final decision "void" and "refus[e] to enforce [Defendant's] license denial."  (Plaintiff's Motion, Br. in Support at 19.)

The Court finds that the remedies proposed by Plaintiff are neither necessary nor appropriate to attain compliance with the Court's judgment in this case.  If it could be

29

said here that Defendant's decision was unsupported, and thus "not authorized," absent a finding of a willful violation, then it would be appropriate to set aside the decision and either order that a license be granted or, perhaps, order a remand for further proceedings. Yet, as is evident from the Court's rulings in this opinion, there exists a wholly separate and independent ground upon which to conclude that Defendant's denial of Plaintiff's application was "authorized."  In particular, and as both parties clearly recognize, Defendant's initial decision rested in its entirety, and its final decision rested in part, upon the ground that Plaintiff's operation of a firearms business from his home violated the Redford Township zoning ordinance.  Plaintiff cannot complain that he lacked notice and an opportunity to be heard as to this ground for Defendant's decision — to the contrary, his claim of a due process violation is entirely predicated on the fact, and it is likewise evident from the administrative record, that this was the principal (if not sole) focus of the evidence offered and arguments made in the course of the administrative proceedings.  In addition, this is the main (and first) issue raised in Plaintiff's complaint and addressed in his summary judgment motion.

Under these circumstances, the Court fails to see how any award of relief is warranted to address Defendant's erroneous inclusion of willfulness findings in its final decision.  Defendant has freely acknowledged this error, and has evidently sought, albeit without success, to secure Plaintiff's agreement upon a stipulation providing that Plaintiff's application was denied solely on the basis that his operation of a firearms business from his home was not in compliance with local law.  (See Defendant's Motion,

30

Br. in Support at 6-7 n.4.)[11]  Indeed, in a filing under Fed. R. Civ. P. 26(f) in the very

early stages of this case, Defendant stated that it would "not be arguing 'willfulness' as a

basis for denial in this case."  (See 11/30/2005 Rule 26(f) Conference Report &

Discovery Plan at 2.)  Accordingly, Plaintiff was not prejudiced or otherwise harmed by

Defendant's error, and no remedy is warranted.

**E.    Defendant Is Entitled to Summary Judgment in Its Favor on the Remaining
         Constitutional Claims and Theories Advanced in Plaintiff's Complaint.**

Apart from seeking judicial review and reversal of Defendant's denial of his

renewal application under 18 U.S.C. § 923(f)(3), and apart from the due process theory

addressed above, Plaintiff has asserted two or perhaps three additional claims in his

complaint, in which he evidently advances other constitutional theories for overturning

the challenged decision in this case.  While Plaintiff's summary judgment motion is silent

on these additional claims, Defendant's motion endeavors to construe them and argues

that each of these constitutional claims is lacking in merit.  In his response, Plaintiff

addresses only two such constitutional theories, evidently abandoning any remaining

claims that he might have asserted in his complaint.  As discussed below, the Court

readily concludes that neither of the two theories addressed by Plaintiff in his summary

judgment submissions provides a legally viable basis for disturbing Defendant's decision.

---

[11]Having failed to secure such an agreement, Defendant instead sent Plaintiff a letter on May 16, 2006, clarifying that its denial of his renewal application was based solely upon his business's lack of compliance with local law, and not on any finding of a willful violation.  (See Defendant's Response to Plaintiff's Motion, Ex. C.)

Plaintiff first contends that the federal firearms licensing statute represents an invalid exercise of congressional power under the Commerce Clause, at least to the extent that it requires applicants to certify that the operation of a firearms business on the licensed premises comports with state and local law.  See 18 U.S.C. § 923(d)(1)(F)(i). Plaintiff does not dispute, nor could he, that Congress has acted consistently with its Commerce Clause power by mandating that firearms dealers be properly licensed.  See, e.g., United States v. Day, 476 F.2d 562, 565-67 (6th Cir. 1973); Mandina v. United States, 472 F.2d 1110, 1113-14 (8th Cir. 1973); United States v. Boone, 904 F. Supp. 868, 869-70 (N.D. Ind. 1995), aff'd, 108 F.3d 1380, 1997 WL 117266 (7th Cir. Mar. 6, 1997). Rather, Plaintiff maintains that *one specific aspect* of this federal licensing scheme — namely, the requirement that an applicant certify conformity with state and local law — exceeds congressional power under the Commerce Clause.

As Defendant correctly observes, the ruling cited by Plaintiff, United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995), is simply inapposite to his constitutional challenge here.  Having conceded, as he must, that Congress has the power to enact a licensing scheme for firearms dealers, his constitutional challenge to a particular *element* of this statutory scheme can succeed only if he can show that this specific aspect of the means chosen by Congress to regulate firearms dealers is not "reasonably adapted to the end permitted by the Constitution."  Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 276, 101 S. Ct. 2352, 2360 (1981) (internal quotation marks and citations omitted).  Plaintiff has not even attempted such a showing here.  To the contrary,

32

he expressly acknowledges in his complaint that the government has a "legitimate interest in ensuring compliance with local and state law." (Complaint at ¶ 56.) The legitimate interest served by this requirement is likewise evident to the Court, as Congress reasonably could have sought to minimize any potential friction between federal and local authorities by ensuring that the federal government licenses only those firearms businesses that conform to state and local law.[12] Accordingly, the Court rejects Plaintiff's Commerce Clause challenge.

This leaves only Plaintiff's claim that the federal licensing scheme for firearms dealers, at least as it has functioned in this case, impermissibly co-opts state and local authorities by soliciting their views as to whether the operation of a firearms business at a particular location would comport with state and local law. In support of his muddled argument on this point, Plaintiff cites Printz v. United States, 521 U.S. 898, 933, 117 S. Ct. 2365, 2383 (1997), in which the Supreme Court relied on principles of federalism and separate state sovereignty to hold that "[t]he Federal Government may not compel the States to enact or administer a federal regulatory program."

Even Plaintiff himself must acknowledge the obvious distinction between the statutory scheme at issue in Printz (the Brady Handgun Violence Protection Act) and the

---

[12]Given this evident purpose behind the requirement that an applicant certify his compliance with state and local law, it is absurd to contend, as Plaintiff does here, that this requirement impermissibly "usurp[s] . . . historically local functions such as zoning." (Plaintiff's Response to Defendant's Motion at 18.) To the contrary, the federal statutory scheme would be far more likely to usurp the zoning authority of local governments if it granted licenses, and thus the imprimatur of federal law, to businesses that failed to comport with local zoning ordinances.

procedure employed by the Defendant agency in this case.  The lynchpin of the Court's analysis in <u>Printz</u> was that the challenged statute ***compelled*** the participation of state and local officials.  Here, in contrast, the Defendant agency merely ***requested*** that Redford Township officials offer their opinions as to the proper interpretation of the Township's zoning ordinance, and those officials ***voluntarily*** agreed to do so.  Having recognized this obvious distinction, Plaintiff falls back on the argument that a Michigan statute, Mich. Comp. Laws § 123.1102, prohibits local officials from even ***voluntary*** participation in the federal licensing process, as this would constitute impermissible "firearms regulation" that Michigan law reserves solely to the state.  The Court already has addressed (and rejected) this state-law preemption argument, and sees no need to revisit this analysis here, particularly in the guise of a federal constitutional claim.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiff's May 8, 2006 motion for summary judgment is DENIED.  IT IS FURTHER ORDERED that Defendant's May 8, 2006 motion for summary judgment is GRANTED.

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  February 9, 2007

34

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 9, 2007, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager